VANTILBURGH, appellant, *v.* BLACK, respondent.

ESTOPPEL.   The doctrine of estoppel does not apply to prevent a mortgagee
     from purchasing the mortgaged premises or a portion thereof, when sold
     under the foreclosure of mechanic's liens, nor to prevent his taking pos-
     session of such premises under a writ of assistance when the time of re-
     demption under such sale has expired, nor are the rights thus acquired
     lost or merged in his subsequent foreclosure of his mortgage.
JUDGMENT — *evidence — jurisdiction — indefiniteness — representations.*   On an
     appeal from a judgment alone, when there was no motion for a new trial,
     the appellate court cannot review the evidence upon which the court
     below based its findings.
The judgment of a court having jurisdiction of the parties and the subject-
     matter is not void and cannot be attacked collaterally.
Judgment in a lien case is not void through indefiniteness of description of
     the property subject to such lien, and cannot be attacked therefor col-
     laterally.
A judgment will not be disturbed on the ground of representations made by
     mortgagee at the former lien sale, the same being true in fact.

### Appeal from First District, Jefferson County.

SHOBER & LOWRY and A. G. P. GEORGE, for appellant.

CHUMASERO & CHADWICK, for respondent.

WADE, C. J.   This is an appeal from a judgment for the
defendant in an action to set aside certain decrees in favor of the
defendant, and for other relief.

The facts material to a determination of the rights of the par-

ties, are as follows: On the 6th day of November, 1872, the plaintiff, Vantilburgh, and wife executed to the defendant, Black, a mortgage upon a certain tract of land known as the Warm Springs Ranch, comprising one hundred and sixty acres, upon which there was situate a water right and a flouring mill then in process of construction, and upon a certain other tract of land comprising one hundred and sixty acres, to secure the payment of a certain promissory note for $6,000, executed by Vantilburgh and wife, to Black, of that date. At the date of the execution of the note and mortgage, the flouring mill upon the mortgaged premises was in process of construction by a man named Otho Curtis, and another named Isaac Dodgson, who commenced work thereon September 26, 1872, and continued until the last of January, 1873, when, within the statutory time, they secured mechanics' liens upon the mill, the water right appurtenant thereto, the mill site, and a convenient space around said property of one acre of ground. On the 10th of March, 1873, Curtis filed his complaint against Vantilburgh to foreclose his lien, making Black, by reason of his mortgage of November 6th, a party defendant, who was duly served with summons, but did not answer. On the 12th of April following, Curtis procured a decree for the sale of the property included within his mechanic's lien, and on the 16th day of May, 1873, by virtue of such decree, the mill, water right, appurtenances and mill site were sold by the sheriff of Jefferson county, at public auction, one Lineberger becoming the purchaser at such sale.

On the same day, and in pursuance of a similar decree, procured by Dodgson upon his lien, the same property was again sold, and Lineberger became the purchaser thereof, and received certificates of sale from the sheriff.

On the 3d of November, 1873, Black purchased these certificates from Lineberger, paying him therefor the sum of $774.59, being the amount of his bids, together with the interest thereon, and the penalty. On the 16th day of January, 1874, Black received from the sheriff his deeds for the premises and property so bid off and sold to Lineberger, and on the 4th day of March, was placed in the possession thereof by virtue of a writ of assistance, issued upon petition of Black, and the order of the court thereon.

By virtue of these proceedings Black had received a deed for, and had entered into the possession of the flouring mill, water right, mill site, and one acre of ground as above described. Subsequently to the execution of the deed to him by the sheriff, to wit: on the 30th day of January, 1874, Black filed his complaint to foreclose his mortgage for $6,000, of November 6th, 1872, upon all the property described in the mortgage, including the mill, mill site, and all the property sold by virtue of the foreclosure of the mechanic's' liens of Curtis & Dodgson, and for which he then held the sheriff's deed, and on the 24th day of February, 1874, he obtained a decree authorizing a sale of all the property described in the mortgage, as well the property sold by virtue of the foreclosure of Curtis & Dodgson, and of which he was then the owner, as all the other lands and property therein described, and on the 1st day of April, 1874, all of said property was sold at public auction, and Black became the purchaser thereof.

Under this state of facts Vantilburgh rests his demands for a reversal of the judgment herein in favor of Black, mainly upon this proposition: that Black, after he had procured a title to the mill property, caused his mortgage thereon to be foreclosed and the property sold under the decree, himself becoming the purchaser thereof and thereby; that he sold the entire interest of the mortgagor and mortgagee in the property; that he thereby surrendered his title to the mill property procured in the lien cases; that thereafter he could claim only such title in the property as resulted from his purchase in the foreclosure sale, and, therefore, that the writ of assistance, resting its validity upon his title in the lien cases, was wrongfully issued and is void. If the conclusion deducible from the premises is incorrect, then there is not much left in the case. If, notwithstanding the sale under the decree of foreclosure, Black still retained his title by virtue of the sheriff's deeds in the lien cases, then the writ of assistance was properly issued, providing such deed gave him the right to the possession of the property. What was the effect of the foreclosure and sale of the mill property upon Black's previously acquired title? The object of a foreclosure is to sell the mortgagor's interest in the mortgaged property, the application of the proceeds upon the debt, and a judgment for any deficiency.

Black, as mortgagee under our statute, held a lien upon the property, and not a constitutional estate therein, and in an ordinary foreclosure the only interest affected thereby is that of the mortgagee's lien and the mortgagor's title. The purpose of the decree is to subject the latter to the payment of the former, and beyond this the title or interest of the mortgagee is not necessarily brought into question. Certainly not by the mere act of procuring a foreclosure and sale of the mortgagor's interest in the property. After a foreclosure and sale of the property, would the mortgagee be estopped from asserting his previously acquired title? Estoppel rests upon fraud. If no one is defrauded or injured, then no one is estopped.

If a mortgagee should procure a foreclosure of his mortgage, and a sale of the property thereunder, and an innocent third person should become the purchaser at such sale, then the mortgagee, we should say, would be estopped from thereafter asserting any title to the property thus sold by his procurement, for the reason that such act would be a fraud upon the purchaser. To permit any thing of the kind would endanger almost every judicial sale, or tend in that direction. But where the mortgagee himself becomes the purchaser, he only strengthens his previous title, and there is no ground for estoppel. He cannot defraud himself. · The assertion of his previously acquired title in such a case injures no one, and no one can complain thereof. The whole theory of the appellant's case rests upon the doctrine that the mortgagee and a stranger, when they purchase at a foreclosure sale, stand in precisely the same position, and the distinction is entirely lost sight of that, while in the case of a stranger, the mortgagee might be estopped because of fraud, but that in his own case the doctrine of estoppel would not apply, because he cannot defraud himself to the injury of another.

Many authorities are cited to maintain this proposition : That a lien creditor, having elected to enforce his claim by taking judgment, and causing the land subject to the lien to be sold generally, and without reservation, as the property of the debtor, will be estopped thereafter from denying that the complete title was in the execution defendant at the time of the sale, and estopped

from again subjecting it to sale for any unsatisfied portion of his claim. See Rorer on Judicial Sales, § 796; *Freeby* v. *Tupper*, 15 Ohio, 467; *Fosdick* v. *Risk*, 15 id. 84; *Simon's Estate*, 19 Penn. 439; *Mahony* v. *Horan*, 53 Barb. 29.

. An examination of these authorities will, we believe, show that the principles therein enunciated have their foundation in the doctrine of estoppel, and rest upon the obvious principle that where a mortgagee or other lien creditor procures the property of his creditor to be sold, and a third person becomes the purchaser, such creditor cannot thereafter assert any title to the property which he held at the time of the sale.

One of the strongest cases cited, and the one most relied on by appellant, is that of *Fosdick* v. *Risk*.

In that case, the court say: "It would seem that when the mortgagee himself, by his own action, as in the present case, causes the mortgaged premises to be sold, it would be the height of injustice to permit him to pocket the money made by such sale, and still hold on to the premises until he could extort from the purchaser a further sum to relieve the land from his own mortgage."

In order to make that case an authority, in any manner applicable to the one under consideration, a stranger should have been the purchaser at the foreclosure sale, and Black thereafter should have attempted to claim the property by virtue of his deeds from the sheriff in the lien cases. Certainly, in such a case, the law would estop him from extorting money from the purchaser by the practice of any fraud of the kind. But when he purchases the property himself the whole nature of the case is changed, and the authorities relied on are not in point.

It is insisted, however, that Black purchased the lien incumbrances to secure his mortgage; that his mortgage, by its terms, authorized him so to do, and to include in his decree the amount so paid to remove incumbrances for the protection of his mortgage; that the decree includes not only the amount of the note, but also what the mortgagee had been compelled to pay for taxes and to remove incumbrances, and, therefore, that he surrendered his title by virtue of the sheriff's deed in the lien cases, and ought not now to be permitted to assert any interest therein.

That the decree is for a much larger amount than it should have been gives color to this claim. But the averments of the complaint and the findings of the court do not authorize or justify the conclusion that the decree includes any amount paid to remove incumbrances. The complaint does not, by any implication even, aver that any sum whatever had been paid to remove incumbrances or for taxes, but in the prayer of the complaint there is a demand for an accounting to ascertain what had been paid by the mortgagee to protect his mortgage from other liens, and for a sale of the property to satisfy such payments, and the note which the mortgage secured, but no accounting was had, and in the decree the court found only what was due upon the note and mortgage, and ordered a sale of the premises to pay such amount. It seems to us clear from the record what was litigated in the action. But some of the ambiguous and blind averments of the complaint may have justified the court below in hearing proof as to whether the lien incumbrances were included in the amount of the decree, and especially was such proof proper to explain the excess in the decree, and the court, having substantially found, upon the proofs submitted, that such liens were not included therein, we cannot review such action. Even if it had appeared, *prima facie*, that the liens were included in the decree, it would have been proper to have shown by parol testimony that they, in fact, were not so included. Freeman on Judgt. 243, and cases there cited.

Proof having been submitted by both parties upon the trial of this issue, we cannot disturb the findings of the court thereon. Such findings are conclusive upon us. This is an appeal from the judgment. There was no motion for a new trial, and we cannot examine the evidence.

The appellant insists, upon another ground, for reversing the judgment, and it is this: That the decrees in the lien cases, having been entered directly against the property, and providing in the first instance for a sale thereof and not for a judgment, as in ordinary cases, as the statute provides. Therefore the decrees are void.

These decrees for the reasons stated are not void. The most that can be said is, that they were irregular.

The court rendering the decrees had jurisdiction of the person and of the subject-matter, and these conditions conceded, the judgment is not void, however erroneous it may be, and is not subject to attack collaterally.  *Moore* v. *Martin*, 38 Cal. 428 ; *Chase* v. *Christianson*, 41 id. 253.  There are numerous authorities to the same effect.

It is also claimed that the description of the property in the liens and all subsequent proceedings thereunder, in consequence of such description, are void.

The description is as follows :  " The mill, the water right, appurtenances thereto, the mill site and a convenient space around said property, of one acre of ground."

The uncertainty of the description does not invalidate the liens or the decrees founded thereon.  In the case of *Tibbetts* v. *Moore*, 23 Cal. 209, the description of the property in the lien was :  " A quartz mill, etc., with such convenient space of land around the same as may be required for the convenient use and occupation thereof."  The decree contained this description ; and on objection thereto the court says :  " In cases of this kind it is proper for the court, by its decree, to define the amount and extent of the land connected with the mill, which is properly subject to the lien. The decree in this case, however, does not do so, and this is also urged as an objection.  Such an omission will not invalidate the decree, but renders it doubtful whether the purchaser under it will acquire any land beyond that covered by the buildings."  We are only called on to determine whether such description renders a decree containing it, and based thereon, void, and subject thereby to collateral attack.  The authorities are conclusive on the question that such description does not render the decree void.  See Philipps on Liens, § 388 ; *Quackenbush* v. *Carson*, 21 Ill. 99 ; *Caldwell* v. *Asbury*, 29 Ind. 451 ; *Tinker* v. *Geraghty*, 1 E. D. Smith, 688 ; *Kennedy* v. *House*, 41 Penn. 39 ; *McClintock* v. *Rush*, 63 id. 203.

The decrees in the lien cases being valid the sales thereunder are good, and Lineberger, the purchaser at such sales, after the time for redemption had expired, was entitled to a writ of assistance to put him in possession of the property.  But before the redemption period expired, Lineberger assigned his sheriff's certifi-

cates of sale to Black, and he received the sheriff's deeds of the property sold, and we can see no reason why Black was not thereby entitled to a writ of assistance. His deeds gave him the right of possession. In this respect he was substituted for Lineberger. The petition for the writ is incorrectly entitled, but the facts stated therein make a conclusive case in favor of Black, and show that he, by the assignment of the certificates, had become entitled to all the rights of Lineberger in the sales, and that the sheriff rightly executed to him his deeds for the premises, and in such a case the writ of assistance rightfully issues in favor of the assignee of the purchaser.

The amount of the decree in the foreclosure case is too large by about $1,500. The error arose in the computation of the interest on the note. Good conscience would demand that this amount be indorsed on the deficiency judgment, and if, in this proceeding, we had the authority to correct the error, we should do so at once; but in this collateral attack on the judgment and decree, our hands are tied. The proper remedy was by appeal in the foreclosure case.

Another reason assigned for asking that the sales in the lien cases be set aside is, that Black, by his representations and statements at the time of such sales, prevented a fair sale from taking place. His statements were as follows: " That he had a lien upon the property and had made a motion in court to set aside the judgment, and if they bought it they did so at their peril."

These statements were in fact true. He had made motions to set aside the judgments; he had a mortgage on the property offered for sale, and any one bidding thereon did so subject to such mortgage. These statements do not seem to have been made to prevent a fair sale of the property, but rather that those proposing to bid thereon might do so understandingly, and statements and representations so made within the truth ought not to disturb the sale.

*Judgment affirmed.*