# NAVAJO LIVE STOCK & TRADING CO. v. GALLUP STATE BANK.

### SYLLABUS BY THE COURT.

1.   The pledgee of negotiable promissory notes of the assignee and chattel mortgage securing the same is entitled to recover of the parties to such collateral notes the whole amount of their face, holding any surplus for the benefit of the persons who are entitled to it; there being no equities existing between the maker of the notes and the original payee.
P. 156

2.   The pledgee of property has the control of it for the time being, and he represents not only his own interests, but that of the pledgor, in taking any proper action for the preservation of it and the collection and care of its proceeds.   P. 156

3.   Where proceedings are taken by the pledgee of promissory notes and a chattel mortgage regularly assigned securing said notes held by the pledgee as collateral security to foreclose the mortgage, the maker of the notes and the mortgagor attempting to redeem, in order to exrcise the right, were required to pay or tender all that was justly or equitably due under the mortgage, together with interest, if any due, and the expenses and costs directly and reasonably incurred by the pledgee in attempting to foreclose the same; the mortgage providing that the mortgagor upon default should pay such costs, expenses, and attorney's fee, and a tender of the amount due in order to effect redemption should have included such costs, expenses, and attorney's fee.          P. 157

4.   Whoever has the affirmative of the issue, as determined by the pleadings, or, where there are no pleadings, by the nature of the investigation, has the burden of proof.   It never shifts from that party either in civil or criminal cases. P. 159

Appeal from District Court, Bernalillo County; H. F. Raynolds, Judge.

Action by the Navajo Live Stock & Trading Company against the Gallup State Bank.   Judgment for defendant, and plaintiff appeals.   Affirmed.

H. B. JAMISON, of Albuquerque, for appellant.

W. A. KELEHER, of Albuquerque, and H. C. DENNY, of Gallup, for appellee.

OPINION OF THE COURT.

ROBERTS, J.   On February 28, 1916, the Navajo Live Stock & Trading Company, appellant herein, executed and delivered to Emma Franklin its two demand notes for $17,500, which notes were secured by a chattel mortgage on all the live stock owned by said corporation. Emma Franklin owned practically all of the capital stock of the corporation.   Thereafter the corporation borrowed $20,000 from the Gallup State Bank, appellee herein, which notes were not payable until some time after November 25, 1916.   To secure the payment of these notes Emma Franklin assigned and transferred to the Gallup State Bank, as collateral security, the two $17,500 notes executed to her by the corporation and the chattel mortgage securing the same.

While not found by the court, it is possibly true, as shown by the evidence, that on or about November 8, 1916, the Gallup State Bank was apprised that some one was making away with a portion of the live stock, attempting to drive it out of the state, and expenses were incurred by the bank in preserving and protecting the property.

On November 16th Emma Franklin notified the Gallup State Bank that there was danger of the dissipation of the property covered by the chattel mortgage, and demanded that the bank take steps to enforce the same. On the 18th of November the bank made a demand upon the corporation for the payment of the two notes, and demanded possession of the live stock secured by the mortgage.   The corporation admitted in writing the violation of the terms of the mortgage and delivered possession of the property covered thereby to the bank. On November 25th Charles Chadwick & Co. purchased from Emma Franklin all her stock in the corporation, and thereupon paid to Emma Franklin $35,000 and interest, called for by the two demand notes, paid to the Gallup State Bank $11,000 and interest for the balance due on note executed to it by the corporation, and demanded a return of the mortgaged property.

The bank refused to return the property until it should be paid the sum of $250 attorney's fee which it had incurred in the steps taken to foreclose the mortgage, and $205 expenses incurred in taking possession of the property. The Navajo Live Stock & Trading Company, in order to secure possession of the mortgaged property, paid the bank under protest the sum of $455 covering said items, and this suit was instituted in the district court of McKinley county to recover said sum so paid. The case was tried to the court, findings of fact were made, and conclusions of law stated upon which judgment was rendered for the appellee.

The court found that the $250 demanded by appellee as attorney's fee was a reasonable fee for the services rendered by appellee's attorney in the proceedings taken to foreclose the mortgage, and that the $205 was a necessary expense incurred in taking possession of the property and caring for the same; that it was justly owing to appellee at the time of the redemption.

The judgment is attacked upon several grounds, which will be considered in the order presented in appellant's brief.

First. It is argued that at the time the money was paid under protest the Navajo Live Stock & Trading Company, through Charles Chadwick & Co., had paid Emma Franklin, pledgor, every dollar demanded by her as due upon the collateral notes, as it had a right to do if it paid the bank the amount due on the principal notes, as it did, and that then to compel the corporation to pay the pledgee money due to Emma Franklin was illegal and unjustified, and that the bank's remedy for the money spent was and is against Emma Franklin.

We are not able to appreciate the force of appellant's contention. If it is correct, then, in every case where promissory notes or chattel mortgages which provide that upon default and the placing of the same in the hands of an attorney for collection the maker of the note

shall pay an attorney's fee and the cost of collection, the pledgee of such notes or mortgages employing an attorney to collect shall have no redress against the maker of the notes or mortgages, and would be required to look to the pledgor for such expenses; and in such case, as under the law it is the duty of the pledgee to proceed to enforce such collateral at the time it becomes due, the maker of the note or mortgage would be excused from the performance of a portion of his contract, namely, the payment of attorney's fee and the cost of collection, because the pledgee's remedy would be against the pledgor, and he could not enforce that provision of the collateral.

[1] This position is manifestly unsound. While the pledged notes and mortgage in question were in an amount in excess of the obligation owing to the bank, nevertheless the bank had the right to sue for and recover the full face of the collateral notes.

"The transfer before maturity of a negotiable promissory note, so as to make the pledgee a party, although as collateral security for a principal indebtedness less in amount than the notes held as collateral, vests an absolute title in the pledgee in such collateral, irrevocable except upon the payment of the principal debt. The pledgee is entitled to recover of the parties to such collateral note the whole amount of its face, holding any surplus for the benefit of persons who are entitled to it." Colebrooke on Collateral Securities (2d Ed.) § 91.

Of course, if there were equities existing between the maker of the note and the original payee, the extent of the recovery might be limited to the amount of the debt for the payment of which the collateral was pledged.

[2] In 21 R. C. L., page 666, it is said:

"The pledgee of property has the control of it for the time being, and he represents not only his own interest, but that of the pledgor, in taking any proper action for the preservation of it and the collection and care of its proceeds. * * * If it is a mortgage upon land, and regularly assigned to him, he may foreclose the mortgage for a breach of the condition, if he deems such action best for the interests of himself and the pledgor."

[**3**]  From these observations it will be seen that it was the duty of the pledgee of the notes and mortgage in question to take the steps which were taken looking toward the foreclosure of the mortgage.  Indeed, it would probably have been liable to the pledgor had it failed in this regard and loss had accrued.  What, then, was the situation of the appellant at the time it made the payments referred to on the 25th day of November, 1916? What appellant was attempting to do at that time was to effect a redemption of the mortgaged property.  Proceedings looking to the foreclosure had already been taken, and possession of the property was in the appellee. Appellant attempting to redeem, as it did, in order to exercise the right, was required to pay or tender all that was justly and equitably due under the mortgage, together with interest, if any due, and the expenses and costs directly and reasonably incurred by the mortgagee in the protection of his rights under the mortgage.  11 Cyc. p. 743.  What then was justly and equitably due under the mortgage at the time of the attempted redemption?  Certainly the costs which appellee had incurred in preserving the property and taking possession of and caring for the same thereafter were justly and equitably due the appellee as well as the attorney's fee; for by the terms of the mortgage appellant had agreed to pay these expenses upon breach of the conditions of the mortgage.  Consequently, when it sought to redeem, it was not entitled to exercise the right without the payment of these costs and charges.

In the case of Woodward v. Lutsch, 69 Wash. 59, 124 Pac. 393, the mortgagee had taken possession of the property, or rather the sheriff had at the instance of the mortgagee, and was preparing to sell the property when the mortgagor sought to redeem.  He refused to pay the attorney's fees, tendering the amount of the indebtedness less such fees.  The court said:

"A tender at that time, to be sufficient, must have included the reasonable costs incurred, including a reasonable attorney's fee, because the mortgage so provided."

See, also, Flores v. Stone, 21 Cal. App. 105, 131 Pac. 348, 351, 352.

Appellant argues that, because it paid to the pledgor the face value of the notes secured by the mortgage, and paid to the. bank the amount due it on the notes which it held, and which was secured by the collateral in question, no obligation rested upon it to pay the bank the attorney's fee and costs in question; but, as we have seen, what it sought to do was to effect a redemption of the property, and this it could not do without the payment of the items in question. It was the holder of the notes owing Emma Franklin as pledgee, and the maker of such notes could not pay the money to Emma Franklin while such notes were held by the bank.

It is next argued that attorney's fee and expenses could not be charged against the Navajo Company, except in accordance with its contract contained in the collateral notes and mortgage, and which was that there should be a bona fide effort to collect the notes from the company, and here there was not, but only taking possession of the property for the purpose of camouflaging other unsecured creditors.

This contention is unsupported by the findings; consequently must be dismissed without consideration. It is true that the action, in proceeding to foreclose the mortgage, was taken because of certain attachment suits by unsecured creditors, but this is no evidence of bad faith on the part of the bank in proceeding to enforce the collateral.

It is next argued that the paper given the appellant at the time of the payment of the money under protest by the bank, acknowledging receipt of the same, stated that the $250 paid the attorney was for services rendered in collecting or attempting to collect the collateral notes and the notes held by the bank secured by such collateral, and that, because the receipts so recited, the cause should be remanded to the district court, with instructions to ascertain what portion of the $250 was

earned.for services rendered in connection with the foreclosure of the mortgage.

The court found that the $250 was a reasonable fee for the services rendered in the attempt to foreclose the mortgage, and the principal note secured by the collateral was not due at the time of the attempted foreclosure. Consequently we conclude, as the district court evidently did, that the recital in the receipt given the appellant was an error; that the $250 was earned by the attempted foreclosure, and the amount, in view of the amount secured by the mortgage, was certainly very modest.

It is lastly argued that, after the acknowledgment signed by the president of the Gallup State Bank showing that the money was paid under protest was proven by appellant, the burden of proof to show that the $455 charge was legal was on the appellee, and the burden of proving it was illegal was not upon the appellant.

[4] No authority is cited in support of this contention, and, indeed, we believe none can be found. The general rule is that:

"Whoever has the affirmative of the issue, as determined by the pleadings, or, where there are no pleadings, by the nature of the investigation, has the burden of proof. It never shifts from that party in either civil or criminal cases." 16 Cyc. 926.

Here appellant alleged in its complaint, in order to sustain its cause of action, that the payment made by appellee was illegal, and certainly the burden rested upon it to establish the truth of this allegation.

Finding no error in the record, the judgment will be affirmed; and it is so ordered.

PARKER, C. J., and HOLLOMAN, District Judge, concur.