NETT, Appellant, *v.* STOCKGROWERS' FINANCE COR-
PORATION et al., Respondents.

(No. 6,355.)

(Submitted January 14, 1929.   Decided February 2, 1929.)

[274 Pac. 497.]

118

*Mr. Wellington D. Rankin, Mr. A. H. Angstman* and *Mr. Arthur P. Acher,* for Appellant, submitted a brief; *Mr. Sam D. Goza, Jr.,* of counsel, argued the cause orally.

*Messrs. Freeman, Thelen & Freeman,* and *Mr. George W. Padbury,* for Respondents, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment refusing to grant an injunction. Affirmed.

In 1921 the plaintiff, Anna E. Nett, executed and delivered to the American Bank & Trust Company, of Great Falls, her note for $18,000 and a chattel mortgage on certain cattle. The mortgage was duly filed in the office of the clerk of Lewis and Clark county wherein plaintiff resided and kept her cattle. Be-

fore the maturity of the note the bank assigned it and the mortgage to the Stockgrowers' Finance Corporation, whose principal place of business was at Kansas City, Mo., and thereafter the mortgage was kept in force by the filing of the requisite affidavit. Plaintiff made payments on the note from time to time, but defaulted as to a portion of the debt, and, after maturity, the finance corporation placed the note and mortgage in the hands of the law firm of Freeman, Thelen & Frary for collection. In May, 1925, on payment of $1,000 by plaintiff, the corporation and its attorneys agreed to extend the time of payment of the balance for a time.

On October 1, 1925, the attorneys placed a certified copy of the mortgage in the hands of the sheriff of Lewis and Clark county, with written instruction to exercise the power of sale granted in the mortgage and from the proceeds to retain the sum of $7,398.55 then due as principal and interest on the note, together with the costs and charges of sale and the sum of $500, specified as a reasonable fee for the services of the attorneys in the matter. No steps were taken by the sheriff until October 5, when he went upon plaintiff's premises where the cattle were then held and placed a keeper in charge of the cattle. The day following plaintiff turned over to the deputy sheriff a check for the principal and interest due on the note as a part of the proceeds of a sale of a part of the cattle then on the ranch, which check was forwarded to the attorneys for the finance corporation. The sheriff then proceeded to post the notices of sale of the balance of the cattle in order to satisfy the balance due by way of costs and charges and attorney fees.

On October 9 counsel for plaintiff paid to the sheriff the sum of $32.30 as his costs incurred and thereupon commenced this action to restrain the sale. A temporary restraining order was issued and served, and, after hearing, the court issued a temporary injunction. Issue was then joined.

The material allegations of the complaint which are denied by answer are: (1) That the finance corporation is a foreign

corporation doing business in this state without first complying with the law relative to such corporations, and is therefore without authority to enforce plaintiff's obligation to it; (2) that in the summer of 1924 the finance corporation agreed, for a valuable consideration to extend the time for payment of the balance due on the note until such time in the fall of 1925 as the plaintiff "might profitably dispose of her cattle"; (3) that plaintiff never agreed to pay any attorney's fee whatsoever under the mortgage; and (4) that the payment of the $7,398.55 on October 6, 1925, fully paid, satisfied, and discharged plaintiff's obligation.

The answer alleges that the sheriff took possession of 592 head of cattle on October 5, 1925, but released a part of the cattle on the payment of $7,398.55, made the day following the seizure; that this was done at the request of plaintiff that she be allowed to sell a part of the cattle in order to raise a sum sufficient to pay the amount due on the note with the costs and attorney fees, and to prevent a forced sale. This allegation is denied by reply.

The answer admits that, unless permanently enjoined, the sheriff will ultimately sell sufficient of the remaining cattle to satisfy the finance corporation's claim for $500 attorney fees.

A trial was had wherein oral and documentary evidence was introduced and the matter submitted to the court. On February 8, 1928, the court made and filed its findings of fact and conclusions of law, all of which are in favor of the defendants, and thereon entered judgment setting aside the temporary injunction and denying plaintiff the relief for which she prayed in her complaint.

Plaintiff has appealed from the judgment; she makes ten assignments of error which, in effect, charge that the evidence is insufficient to justify the findings on the disputed questions in issue; that the stipulations for attorneys' fees were not agreed upon by the parties and are ambiguous and inoperative and not binding; that the court erred in finding that the sheriff took possession of the cattle and thereafter released a part

thereof, and in finding that the time of payment of the balance due was only extended to August 1, 1925; and in failing to find that the finance corporation waived its right to foreclose, or that the payment made on October 6, 1925, did not fully discharge the mortgage. However, the only questions argued under these assignments are those herein considered.

1. Counsel for plaintiff first state that the "stipulation for attorney's fees is void and inoperative," and then propound the question: "Can the mortgagee, under a chattel mortgage which provides for the foreclosure by sale, arbitrarily fix the amount which he desires as an attorney's fee and require the sheriff to sell sufficient of the mortgaged property to satisfy his claim after the mortgage debt has been satisfied?"

Counsel then quote the provisions of the note and mortgage and of the requisition on the sheriff respecting attorneys' fees, and quote from the testimony to show that the finance corporation fixed the amount it claimed as attorneys' fees and that the sheriff would enforce payment of such an amount as was claimed in the requisition, whatever that might be. Without argument or the citation of authorities, counsel leave this question and contend that the stipulations recited are ambiguous.

The stipulations thus challenged are: (a) The recital of the note that "six months after date I promise to pay * * * eighteen thousand dollars * * * with interest * * * and reasonable attorney's fees"; (b) an attempted description of the note, contained in the mortgage, which recites that "the makers, endorsers and guarantors agree to pay a reasonable attorney's fee, if suit is brought"; and (c) the provision of the mortgage that "in case default be made * * * the sheriff * * * is hereby empowered and authorized to sell the said goods and chattels * * * and out of the money arising from such sale to retain the said principal and interest, together with the costs and charges of making such sale, and a reasonable attorney's fee."

The quoted phrase in the attempted description of the note ██ is clearly erroneous; the record discloses that the note was written by hand on a blank paper; evidently the scrivener used a form note in drawing the mortgage. Where a purported copy of an instrument varies from the original, surely the original would control, and it cannot be said that the variation evidences the intention of the parties that an attorney's fee should only be recoverable in case of suit, as the plaintiff insists that she did not agree to pay an attorney's fee under any circumstances. However this may be, the note and mortgage are to be construed together, and even if a conflict exists between the provisions quoted, the terms of the note, as the principal obligation, will control. (41 C. J. 453, and cases there cited; *Morrison* v. *Ornbaun*, 30 Mont. 111, 75 Pac. 953.)

We have, then, the stipulation in the note that the plaintiff pay, not only the principal and interest at maturity, but will pay a reasonable attorney's fee, without restriction as to the condition under which the latter payment shall be made; construing the note with the mortgage, we have the agreement that, on default, the mortgaged property may be sold and this fee may be retained out of the proceeds of the sale.

Under the stipulation of the note, it might be inferred that ██ the plaintiff should pay such a fee in any event, but such a stipulation is in the nature of an indemnity contract— an agreement to reimburse the payee for expenses incurred in securing the performance of the payer's principal obligation. (*McCornick* v. *Swem*, 36 Utah, 6, 20 Ann. Cas. 1368 and note, 102 Pac. 626.) The payee of a note providing for attorneys' fees may therefore collect, but may only collect, such a sum as he has actually and necessarily expended or become liable for, on account of the default of the promisor. (*Farmers & Merchants' Nat. Bank* v. *Barton*, 21 Ill. App. 403; *Moore* v. *Staser*, 6 Ind. App. 364, 32 N. E. 563, 33 N. E. 665; *Campbell* v. *Worman*, 58 Minn. 561, 60 N. W. 668.)

The idea in providing for attorneys' fees and costs is that, if the promisor fails to make good his promise, the promisee

may collect such a sum as will leave him the actual amount due him, net. Following out this idea, this court has held, regardless of the rules in other jurisdictions, that the payee is entitled to an attorney's fee if, after default by the maker of the note, it is placed in the hands of an attorney for collection, irrespective of whether action on the note is brought or not. (*Morrison* v. *Ornbaun*, above; *National Park Bank* v. *American Brewing Co.*, 79 Mont. 542, 257 Pac. 436.)

The amount to be recovered as an attorney fee would, of course, depend upon the amount of work done by the attorney and for which the payee became liable. Here it appears that the attorneys had had the note and mortgage for collection for months, and had performed considerable work toward that end, under an agreement by the payee to allow them $500 for making the collection. It further appears that, when plaintiff secured an extension of time in May, 1925, she acted through an attorney who continued to act for her up to August 21, 1925, at least, at which time he wrote her that the payee's attorneys would refrain from placing the matter in the hands of the sheriff for a time, provided she agreed to pay them the attorney's fee of $500; thereafter no action was taken for 40 days. The record thus shows that the attorneys had earned some fees, that the payee had obligated itself to pay a fee of $500, and it comes perilously near to showing that plaintiff had agreed to pay the fee claimed.

2. Counsel, however, contend that, "since the fixing of an attorney's fee rests in the sound legal discretion of the court (*Bohan* v. *Harris*, 71 Mont. 495, 230 Pac. 586), * * * the only fee intended in this case is a fee to be fixed by the court on institution of foreclosure proceedings." Such intention is not expressed in the contract; on the contrary, the mortgage expressly provides for foreclosure by sale and the retention of a reasonable attorney's fee from the proceeds of the sale. (And see sec. 9798, Rev. Codes 1921.)

The exercise of the power of sale granted is in itself a foreclosure of the mortgage, is a complete adjudication, and has the same effect as though conducted in court. (*Yeat-*

*man* v. *Patrician,* 144 Wash. 241, 257 Pac. 622.) Of course, the sheriff has no judicial power to determine what is a reasonable fee, but the payer is not without his remedy; if he considers the fee claimed unreasonable, he may tender to the payee all that he considers due under his contract, and, if his tender is refused, he may sue to enjoin the sale, as plaintiff did in the instant case. By necessary implication, plaintiff's complaint in such an action constitutes an offer to do equity by paying any balance which the court may find still due on the note and mortgage; the answer to such a complaint is, in effect, a bill for an accounting or suit to foreclose the chattel mortgage; being a court of equity, in such a case, the court is in a position to dispose of the whole matter and may decree that the injunction issue unless the payee accept the amount found due to him, and may enter judgment against the payer for the amount so found due and thus foreclose the mortgage in court. (*Riemer* v. *Schlitz,* 49 Wis. 273, 5 N. W. 493; *Graff* v. *Epstein,* 238 Mich. 227, 213 N. W. 190.)

Here, however, the plaintiff does not contest the reasonableness of the charge made, but asserts that no fee whatever was due; the court, in effect, found that the fee was due and was reasonable. As plaintiff neither paid nor tendered any amount as a reasonable attorney's fee and a fee was then due the payee, she was not entitled to injunctive relief. (*Woodward* v. *Lutsch,* 69 Wash. 59, 124 Pac. 393; *Flores* v. *Stone,* 21 Cal. App. 105, 131 Pac. 348; *Navajo Livestock Co.* v. *Gallup State Bank,* 26 N. M. 153, 189 Pac. 1108.)

3. Counsel next contend that the acceptance of the check for $7,398.55 on October 6, 1925, constituted an accord and satisfaction, and therefore released plaintiff from any further payment. There is no merit in this contention, for two reasons: (1) Plaintiff did not plead accord and satisfaction and therefore cannot rely upon it (*Nelson* v. *Young,* 70 Mont. 112, 224 Pac. 237); (2) there is evidence to warrant the finding of the court that plaintiff was given special permission to sell 124 head of cattle, after the sheriff had placed a keeper in charge of them, upon her agreement to turn the proceeds over

to be applied on the mortgage debt. The amount to be thus received might, or might not, satisfy the mortgage; it did not do so and was merely applied on the debt. There was no agreement to accept less than the payee claimed to be due, and there was therefore no accord and satisfaction shown (sec. 7456, Rev. Codes 1921; *Hale* v. *Belgrade Co.,* 75 Mont. 99, 242 Pac. 425; *Rued* v. *Cooper,* 119 Cal. 463, 51 Pac. 704; 1 C. J. 529).

4. We have examined the record with reference to the specifications made that certain of the findings of the court are not supported by the evidence, and find that in each instance, while the finding is contrary to the testimony given by the plaintiff, there is substantial evidence to support the finding, and the finding will not, therefore, be disturbed. (*Vantilburgh* v. *Black,* 2 Mont. 371; *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601; *Babcock* v. *Engel,* 58 Mont. 597, 194 Pac. 137.)

5. Finally, it is contended that the payee waived its right to foreclose. There is no allegation of waiver to be found in the complaint, and it is not, therefore, available to plaintiff. (*Smith* v. *Barnes,* 51 Mont. 202, Ann. Cas. 1917D, 330, 149 Pac. 963; *Snell* v. *North British etc. Ins. Co.,* 61 Mont. 547, 203 Pac. 521.) Nor does the proof warrant a finding on evidence admitted without objection on which we might deem the complaint amended; the most that can be said is that counsel for the payee agreed to forbear foreclosure providing their expenses to date were paid, but there was no showing that such expenses were either paid or tendered prior to the commencement of the foreclosure proceedings.

As we find no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and FORD concur.

MR. JUSTICE ANGSTMAN, being disqualified, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied February 23, 1929.