BANK OF ARKANSAS, (UNITED STATES v.) See Case No. 14,515.

BANK OF BRITISH COLUMBIA, (SEMPLE v.) See Cases Nos. 12,659 and 12,660.

---

## Case No. 859.

### BANK OF BRITISH NORTH AMERICA v. ELLIS et al.

[6 Sawy. 96;[1] 9 Reporter, 204; 8 Amer. Law Rec. 460.]

Circuit Court, D. Oregon. Nov. 12, 1879.

NEGOTIABLE INSTRUMENTS — INDORSEMENT — DEFENCES—DISCHARGE—ATTORNEY'S FEE.

1. The possession of a negotiable instrument imports, prima facie, that the holder acquired it bona fide, for value, in the usual course of business, without notice of any fact impugning its validity; and that he is the owner thereof and entitled to recover the contents from all prior parties thereto.

2. Inquiry into a consideration of a negotiable paper can only be made between privies or the immediate parties thereto,—as the maker and payee or an indorser and his indorsee; all other parties are called remote, and as between them a consideration for making and indorsing the same is conclusively presumed; but a want of consideration may be shown by a defendant against a remote party, if the latter took the paper with the knowledge that such want could be shown against a nearer party.

3. A party who makes or indorses a note without consideration, and for the purpose of thereby lending his credit to another, is an accommodation maker or indorser, and cannot show a want of consideration therefor against any one except the accommodated party.

4. A party to negotiable paper, who seeks to make the want of consideration a defense to an action thereon, must not only allege such want of consideration, but also show how and why he is entitled to make such defense, as against the plaintiff, in any aspect of the case made in the complaint.

5. An indorser's contract and liability is separate and distinct from that of the maker's: he agrees that the instrument will be paid by himself, if not by the maker, and as his own debt, and not that of another.

6. In the absence of anything to the contrary, an indorsement is presumed to have been regularly made after the making of the instrument and the indorsement of the same by the payee and before its maturity, and the indorser thereby becomes liable, as such, to any subsequent holder of the paper, whether he then had any interest in the same or not, unless there was an agreement that he should be liable only as guarantor, which was known to the holder at the time of acquiring the paper.

7. When the holder of a negotiable instrument makes an early blank indorsement payable to himself, he does not thereby discharge subsequent indorsers from their liability as such.

8. A stipulation by the maker of a negotiable instrument for the payment to the holder thereof of an attorney's fee in case the same is not paid without action is a valid promise, and passes with the instrument to each and every holder thereof: and each subsequent party to

such instrument becomes thereby responsible in like manner for such fee to each and every subsequent holder thereof.

[Cited in Pacific Rolling-Mill Co. v. Dayton, etc., Ry. Co., 5 Fed. 852; Adams v. Addington, 16 Fed. 89; Burns v. Scoggin, Id. 735.]

[See Howenstein v. Barnes, Case No. 6,786.]

[At law. Action by the Bank of British North America against M. M. Ellis and others on promissory notes. Plaintiff demurs to answer. Demurrer sustained. Defendants subsequently had leave to file an amended answer, to which plaintiff also demurred. Demurrer sustained. 2 Fed. 44.]

Ellis G. Hughes, for plaintiff.

H. Y. Thompson, George H. Durham, and W. M. Gregory, for defendants.

DEADY, District Judge. *This action is brought to recover the sum of two thousand and twenty-five dollars, alleged to be due the plaintiff on forty-three promissory notes, with interest, costs of protest, and an attorney's fee.

The complaint alleges that the plaintiff is a corporation organized in the United Kingdom of Great Britain and Ireland, and that the defendants are citizens of Oregon; that all of said notes were made on May 1, 1878, and eight of them are payable on October 1, 1878, and the remaining thirty-five on January 1, 1879; that each of said notes was indorsed by said defendants, and thereafter and prior to their maturity the plaintiff acquired the same in the regular course of business, and is now the owner and holder thereof; and that, "said notes falling due and remaining unpaid," the plaintiff procured the same to be protested.

The answer of the defendants contains sundry denials and three special pleas or defenses.

The first one alleges that the makers of said notes received no consideration for the same, and "these defendants, indorsers of said notes, * * * received no consideration for such indorsement," and that the plaintiff, at the time it acquired said notes, had knowledge of these facts.

The second one alleges that said notes were made in pursuance of an agreement between the makers thereof and the Dayton, Sheridan and Grand Ronde Railway Company, that the latter would construct and put in operation by October 1, 1878, a branch of its railway from a place called Broadmeads to the town of Dallas; and were placed in the hands of the defendants, R. S. Crystal, J. D. Lee, and H. C. Brown, as agents and trustees, to deliver the same to said railway company upon the completion by it of said contract; that afterwards said trustees, with the consent of said makers, delivered said notes to said railway company, upon its promise to perform said contract; but that said company has hitherto wholly failed to perform said contract, and the consideration for said

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. Reporter and Amer. Law Rec. contain partial reports only.]

notes has failed; and that the plaintiff had notice of these facts when it acquired said notes.

The third defense alleges that the defendants did not indorse such notes "until long after they were made;" that the same were made payable to the order of said railway company; that said defendants never had "any interest in said notes," or consideration for indorsing the same; and that the plaintiff, at the time of acquiring the notes, had knowledge of these facts.

The plaintiff demurs to each of these defenses because the same does not state facts sufficient to constitute a defense. Each of these defenses must stand or fall by itself, and without any aid from either of the others. Hall v. Austin, [Case No. 5,925;] Bachman v. Everding, [Id. 708.] The first defense merely alleges that the notes were made by the makers and indorsed by the defendants without consideration,—not that the consideration has failed, but that there never was any.

This is not a shadow of a defense to the action. The mere possession of a negotiable note imports, prima facie, that the holder acquired it bona fide. for value, in the usual course of business, without notice of any circumstance impeaching its validity; and that he is the owner thereof, entitled to recover the contents of the same from all prior parties thereto. 1 Daniel, Neg. Inst. § 812; 1 Pars. Notes & B. 184; Collins v. Gilbert, [94 U. S.] 754. Here, the plaintiff not only alleges that it is the owner and holder of these notes, but that it acquired them before maturity, in due course of business.

An allegation, then, that these notes were made or indorsed by the defendants without consideration, is no defense to its claim to recover. Inquiry into the consideration of negotiable paper can only be made between privies, or immediate parties thereto,—as the maker and payee, an indorser and his indorsee. All other parties to negotiable paper are called remote, and, as between them, a consideration for making or indorsing the same is conclusively presumed. But the defendant may make the defense of a want of consideration against a remote party, if he could have done so against a nearer party, and such remote party took the paper with a knowledge that it was open to this defense. 1 Daniel, Neg. Inst. § 174; 1 Pars. Notes & B. 175, 183. And to this qualification of the rule there is an important exception in the case of accommodation paper. A party who makes or indorses a note without consideration, and for the purpose of thereby lending his credit to another, is an accommodation maker or indorser, and cannot make the defense of a want of consideration against any one except the accommodated party. The note is supposed to be taken by third persons upon the credit given to him, and he is expected to pay it. 1 Daniel, Neg. Inst. § 189; 1 Pars. Notes & B. 183. A party to

negotiable paper, who seeks to make the want of consideration a defense to an action thereon, must not only allege such want of consideration, but must go further, and show how and why he is entitled to make such defense, as against the plaintiff, in any aspect of the case made in the complaint. In this case it does not appear from the plea that the defendants are entitled to avail themselves, as against this plaintiff, of the want of consideration for either making or indorsing these notes. The makers are not sued, and the question of their liability in this respect is not in the case. An indorser's contract and liability is separate and distinct from that of the maker's. An indorsement is not merely a transfer of the note, but it is also a fresh and substantive contract, by which the indorser agrees, among other things, that the note will be paid at maturity by himself, if not by the maker, and as his own debt, and not that of another. 1 Daniel, Neg. Inst. § 669; 2 Pars. Notes & B. 23.

For aught that appears here, there is no privity between the plaintiff and the defendants, and therefore it is immaterial, in this action, whether the latter received any consideration for their indorsement or not, unless it further appears that the plaintiff gave no consideration for the notes, and that no holder, intermediate between the plaintiff and defendant, did so. Hoffman v. Bank of Milwaukee, 12 Wall. [79 U. S.] 191. Again, it would not be inconsistent with this defense, if the defendants indorsed these notes without consideration for the accommodation of the makers or payee or its indorsee, and therefore they may be liable thereon, notwithstanding such want of consideration. The plea, to be a good defense, must meet this phase of the case by denying directly that the defendants were accommodation indorsers, or by stating facts inconsistent therewith.

The second plea is still less material than the first. It only alleges, in effect, that the consideration for the making of the notes, to wit, the promise of the railway company to construct and operate a branch road to Dallas by October 1, 1878, has failed. This may be so; but, in an action by a holder of these notes against an indorser, such fact alone is wholly immaterial. Notwithstanding this, even the defendants may have indorsed these notes to the plaintiff, and received from it therefor their full value.

The third defense is also bad. The only fact which it contains, in addition to the others. is that the defendants did not indorse these notes "until long after they were made, and never had any interest in them."

In the absence of anything to the contrary, an indorsement upon negotiable paper is presumed to have been made after the making of the same, and before maturity; and, if such indorsement be made by any one other than the original payee, then after his in-

dorsement. And, as between an indorser after maturity, and a subsequent holder of a negotiable note, the former is held liable as upon a note payable on demand, and even as an original promiser. 2 Pars. Notes & B. 9, 13; 1 Daniel, Neg. Inst. § 928; New Orleans Canal & Banking Co. v. Montgomery, [95 U. S.] 18. This allegation as to the time when the indorsement of the defendant was made only amounts to this, that such indorsement was made after the note was, which fact is consistent with the allegation of the complaint, and the defendant's liability to the plaintiff.

But upon this fact, and the allegation that the defendants never had any interest in the notes, it is argued by counsel that they are not in law indorsers, but guarantors, which is a collateral agreement and void unless made upon a distinct consideration.

What is the nature of the liability which a third person incurs who indorses a note before the payee thereof, has been a vexed question in the law, and has been settled differently in different states. In the supreme court of the United States, the rule is established that such person is either an original promissor, a guarantor, or indorser, according to the nature of the transaction and the intent and purpose with which the indorsement is made; which may be shown by parol, upon the theory that such an indorsement is irregular and ambiguous. Rey v. Simpson, 22 How. [63 U. S.] 350; Good v. Martin, [95 U. S.] 94.

But the allegations that the defendants did not indorse these notes until long after they were made, does not even imply that they indorsed them before the payee did,—before they were put in circulation,—but rather the contrary. Nor is it a sufficient allegation that they were indorsed after maturity.

The presumption is that the defendants indorsed the notes regularly,—after the payee,—and, although they then had no interest in them, they are still liable to the plaintiff as indorsers, unless there was an agreement or understanding at the time that they were to be liable only as guarantors, and that this was known to the plaintiff at the time of acquiring the notes. But in favor of the plaintiff the defendants are presumed to have indorsed as payees; and for the purpose of maintaining this action against them, as such, the plaintiff may write over the indorsement of the original payee, "Pay to the order of the defendants," naming them, or any other contract or direction not inconsistent with what it knew to be the purpose of such indorsement. 2 Pars. Notes & B. 2.

Besides, the defendants may have indorsed these notes for the accommodation of the maker, or the original payee, or its indorsee, and in such case the fact that they had no interest in the notes, and received no consideration for their indorsements thereon, is wholly immaterial, and would be just what every one, at all conversant with the subject, would ordinarily infer from the premises.

In the course of the argument for the defendants, it was suggested that, if their defenses must be considered separately, application would be made to amend the answer so as to state the three in one; and counsel for the plaintiff, as a matter of convenience, has considered this as already done. But such an amendment will make no difference in the result. The plaintiff, being presumed to be the bona fide holder of these notes, for value, before maturity, and such assumption not being negatived or contradicted by these pleas, prima facie, it is entitled to recover their contents from any and all of the prior parties thereto; and no plea is or can be a defense to this action unless it states facts sufficient to negative this conclusion, so far as the defendants are concerned, in any and every phase of the case made in the complaint.

Negotiable paper is the life-blood of commerce and business, and its circulation and usefulness would be seriously impaired if every maker or remote indorser thereof could set up a failure to keep the private understandings or agreements between himself and third persons, upon which he claims to have signed or indorsed the same, to avoid the payment thereof, according to his obligation as shown by the instrument, in the hands of a bona fide holder for value. Parties who put their names to or upon negotiable paper upon the faith of other people's expectations and promises must not expect, if they are thereby deceived or disappointed, to throw the loss upon those who in good faith have taken their paper for what they, or those whom they trusted, gave it out to be.

The demurrer is sustained.