ORANGE J. SALISBURY, RESPONDENT, *v.* J. Z. STEW-ART, J. GOLDEN KIMBALL AND ELIAS S. KIMBALL, APPELLANTS.

PROMISSORY NOTE—ATTORNEY'S FEE—NEGOTIABILITY.

1. The fact that the makers of a promissory note undertake to pay an attorney's fee if suit should be brought to enforce the collection of the note does not render the note non-negotiable.

2. A note falling due in the hands of the payee ceases to be negotiable. Afterwards indorsers take it subject to the same defenses that could have been made to it in the hands of the payee. The stipulation to pay attorney's fees in case of suit binds the maker to pay them as a part of the costs of the remedy, but he cannot be required to pay more than the fees actually charged. They are for the attorney, not for the plaintiff.

(No. 791.   Decided July 2, 1897.)

Appeal from the Second district court, Weber county. Hon. H. H. Rolapp, *Judge.*

Action by Orange J. Salisbury against J. Z. Stewart and others on a promissory note. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*Young & Moyle* and *Rhodes & Tait,* for appellants.

Cited:  *Jones* v. *Radatz,* 27 Minn. 240; *First Natl. Bank* v. *Larsen,* 18 Cent. L. J. 394; *Md. F. Co.* v. *Newman,* 60 Md. 584; *Adams* v. *Seaman,* 82 Cal. 636; *Clark* v. *Barnes,* 58 Mo. App. 667; *First Natl. Bank* v. *Laughlin,* 61 N. W. Rep. 473–4–5; *Garretson* v. *Purdy,* 14 N. W. 100, 102; *First National Bank of Stillwater* v. *Larsen,* 60 Wis. 206; 92 Pa. St. 227; 71 Mo. 618, also 627; 73 Mo. 35.

*Evans & Rogers* and *W. C. Hall,* for respondent.

Cited:  *Gaar* v. *Louisville Banking Company,* (Ky.) 11 Bush. 180; *Sperry* v. *Horr,* 32 Iowa 184; *Seaton* v. *Scovill,* 18 Kan. 433; *Nickerson* v. *Sheldon,* 33 Ill. 372; *Houghton* v. *Francis,* 29 Ill. 244; *Adams* v. *Addington,* 16 Fed. Rep. 89; *Hughitt* v. *Johnson,* 28 Fed. Rep. 865; *Trader* v. *Chidester,* 41 Ark. 242; *Heard* v. *Dubuque County Bank,* 8 Neb. 10; *Dietrich* v. *Bayhi,* 23 La. Ann. 767; *Howenstien* v. *Barnes,* 5 Dillon 482; *Bank of Commerce of Owensbore* v. *Fuqua,* 11 Mont. 285; *Towne* v. *Rice,* 122 Mass. 67; *Arnold* v. *The Rock River Valley Union R. R. Co.,* 5 Duer. 207; *Bank of Commerce* v. *Fuqua,* 11 Mont. 302; See *Montgomery* v. *Crossthwait,* (Ala.) 8 South. Rep. 498; *Benn* v. *Kutzchan,* 24 Or. 28; *Second Nat'l Bank* v. *Anglin,* 6 Wash. 403.

The contrary decisions in Dakota, Minnesota, Wisconsin, Missouri, South Carolina, North Carolina, California, Pennsylvania, Maryland, and Michigan, it would be useless to consider or to attempt to distinguish.

ZANE, C. J.:

This is an action upon a promissory note for $3,500,

with interest at 10 per cent per annum, executed by the defendants, and payable six months after its date to the order of John W. Taylor, the assignor of the plaintiff. It also contained the following stipulation: " And in the event of a suit to enforce the collection of this note, or any part thereof, we further agree to pay the additional sum of ten per cent upon the amount found due, as attorney's fees in said suit." Before its maturity the note was indorsed by the payee to the plaintiff. The defendants alleged in their answer, and offered to prove on the trial, that their signatures were obtained without consideration, by false statements of the payee, and promises which he did not perform, that would have been a defense to the collection of the note in his hands. The defendants assign as error the ruling of the court sustaining plaintiff's objection to their offer. The error alleged, presents for our consideration and decision the question, did the stipulation to pay 10 per cent on the amount recovered, as an attorney's fee, in the event of a suit to collect it, included in the note, destroy its negotiability? While text writers generally agree that such provisions do not affect the negotiability of notes, the question has given rise to much judicial controversy and difference of opinion, and it is impossible to reconcile the numerous decisions on the point. The question is new in this court, and we will endeavor to adopt the rule which our reason commends, and which we think is supported by the better line of authority. The makers of the note promised to pay the holders $3,500, and interest thereon at 10 per cent per annum. This payment was subject to no contingency. It was certain in every respect, and it remained so until a breach of the contract by the defendants. In case the makers should not keep their contract, and it should become necessary to institute suit upon the

note, the makers stipulated they would pay the necessary attorney's fee, and the law required them to pay the other costs. In that case the holder of the note would receive the $3,500 and the interest—precisely the amount the makers promised to pay him. In that event the holder would receive no more for his own use than he would have received had the makers paid according to their promise. It appears right that the parties whose default caused the expense should pay it; that it should not be imposed upon the party who kept his contract. The party who keeps a contract should receive from the one who breaks it compensation for his loss. If the defendants had kept their contract, the holder would have received $3,500 and the interest. They not having done so, the stipulation and the law required the makers to pay him that amount, and no more, for his own use, and to pay the costs of the court and the attorney's fee. Only the costs of the court could have been charged against the defendants without the stipulation. The stipulation, in effect, also added the fee of the attorney, if one should be employed to bring the suit, to the costs imposed by the law upon the defendants. The fee is for the attorney. If the employment of an attorney does not become necessary, or if one is not employed, the court should not allow such a fee, and the allowance should not exceed the amount charged by the attorney. The allowance is not as a penalty, as interest, or as a bonus. It is simply to pay the costs of enforcing the collection of the note by suit. And, if none is charged, none should be allowed against the makers, and no more than is to be actually paid should be allowed against the makers. That is, in legal effect, the stipulation. The court should not allow the plaintiff, by deception, fraud, and false pretenses, to obtain money as an attorney's fee, and then appropriate

it to his own use. Plaintiff should not be allowed (as it is suggested they do sometimes) to call a penalty, additional interest, or a bonus, as an attorney's fee, and by such deception and fraud to induce the court to impose burdens on the makers of contracts—to oppress them in that way or any other. This reasoning proceeds on the presumption that the stipulation to pay the attorney's fee is not negotiable. In other words, the maker interposes the same defense to the attorney's fee when the note is in the hands of an indorsee who received it before due, for a valuable consideration, that he could have interposed if it had been sued upon by the payee. If the makers of the note in question had paid according to its terms, the stipulation for an attorney's fee would have been of no effect. A note becoming due in the hands of payee ceases to be negotiable in the sense that the indorsee takes it free from defenses before indorsement. The reason for the rule that the amount to be paid to the holder must be fixed and certain is that negotiable paper becomes a substitute for money, and for that reason it must indicate precisely how much money it represents. The note in question represented $3,500 and interest while it remained negotiable, and the stipulation further represented that, if suit should be brought, the costs of the remedy, including the attorney's fee, should be paid by its makers. The object of this stipulation was to make the note represent to the holder precisely the $3,500 and interest. The amount of the court costs must depend upon the services rendered by its officers, and the amount of the attorney's fee must depend upon the amount to be paid him, or if suit is brought without the employment of an attorney, as it may be, no fees can be allowed. The amount to be recovered by the holder of the note, which he may appropriate to his own use, is more certain with

the stipulation than without it. Without the stipulation the holder realizes the amount of the principal and interest, less the attorney's fee, whatever that may be, when the maker fails to comply with his contract, but with the stipulation he realizes the principal and interest named in the note. The stipulation relates to the remedy, and not to the amount to be recovered and appropriated by the holder to his own use. The fact that the makers undertook to pay an attorney's fee if a suit should be brought to enforce the collection of the note did not render the note non-negotiable. 1 Daniel, Neg. Inst. § 62a; *Oppenheimer* v. *Bank* (Tenn.) 36 S. W. 705; *Bank* v. *Fuqua*, 11 Mont. 285; *Gaar* v. *Banking Co.*, 11 Bush. 180; *Sperry* v. *Horr*, 32 Iowa 184; *Bank* v. *Anglin*, 6 Wash. 403; *Benn* v. *Kutzschan*, 24 Or. 28.

In 1 Daniel, Neg. Inst., *supra*, it is said: " Such instruments should, we think, be upheld as negotiable. They are not like contracts to pay money and do some other thing. They are simply for the payment of a certain sum of money at a certain time, and the additional stipulations as to attorney's fees can never go into effect if the terms of the bill or note are complied with. They are therefore incidental and ancillary to the main engagement— intended to insure its performance, or to compensate for trouble and expense entailed by its breach. At maturity negotiable paper ceases to be negotiable, in the full commercial sense of the term, as heretofore explained, though it still passes from hand to hand by the negotiable forms of transfer; and it seems paradoxical to hold that instruments evidently framed as bills and notes are not negotiable during their currency because when they cease to be current they contain a stipulation to defray the expenses of collection." In *Oppenheimer* v. *Bank, supra*, the following language is used: "Upon a careful review

of the authorities, we can see no reason why a note otherwise imbued with all the attributes of negotiability is rendered non-negotiable by a stipulation which is entirely inoperative until after the maturity of the note, and its dishonor by the maker. The amount to be paid is certain during the currency of the note as a negotiable instrument, and it only becomes uncertain after it ceases to be negotiable by the default of the maker in its payment. It is eminently just that the creditor who has incurred an expense in the collection of the debt should be reimbursed by the debtor by whom the action was rendered necessary and the expense entailed." The judgment of the court below is affirmed.

BARTCH and MINER, JJ., concur.