**CITIZENS NAT. BANK OF ORANGE, VA., et al. v. WAUGH.**

No. 3854.

Circuit Court of Appeals, Fourth Circuit.

June 3, 1935.

E. H. DeJarnette, Jr., of Orange, Va. (H. E. DeJarnette and John R. Pendleton, both of Princeton, W. Va., on the brief), for appellants.

James S. Kahle and George Richardson, Jr., both of Bluefield, W. Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from so much of a judgment on certain promissory notes as denies recovery of the 10 per cent. attorney's fee therein provided for. The facts are undisputed. The makers of the notes were residents of West Virginia, and the notes were executed and delivered to a Virginia bank, from which a loan was obtained. While the notes and accompanying deed of trust not here material were executed in West Virginia, the agreement with the bank in accordance with which the loan was obtained was made in Virginia, the notes were made payable at the bank in Virginia, and the loan was closed in Virginia by the bank's accepting the notes there and crediting the makers on its books with the amount of the loan. The notes contained a provision, recognized as valid under the laws of Virginia, for the payment of a 10 per. cent. attorney's fee for collection in case of default. The court below denied recovery on this provision, on the ground that the public policy of West Virginia, as declared by the Supreme Court of Appeals of that state, forbade the enforcement of such provision by the courts. From this judgment the plaintiffs have appealed.

The provision for the payment of an attorney's fee for collection is recognized as valid by the law of Virginia where the contract was made and where it was to be performed. Conway v. American Nat. Bank, 146 Va. 357, 131 S. E. 803; Cox v. Hagan, 125 Va. 656, 100 S. E. 666, 673; Triplett v. Second Nat. Bank, 121 Va. 189, 92 S. E. 897. It is held invalid by the Supreme Court of Appeals of West Virginia on the ground that it may be used as a cloak for usurious interest and is a mere penalty, and hence contrary to the public policy of the state. Raleigh County Bank v. Poteet, 74 W. Va. 511, 82 S. E. 332, L. R. A. 1915B, 928, Ann. Cas. 1917D, 359. And the courts of West Virginia deny enforcement to such a provision, even where the contract containing it is made and to be performed in another state, on the ground that it is at variance with the public policy of the state of the forum. Campen Bros. v. Stewart, 106 W. Va. 247, 145 S. E. 381. This holding is in accord with the decisions of a number of states (see note in Ann. Cas. 1917D, at page 365), although opposed to the reasoning of the Supreme Court of Appeals of Virginia in R. S. Oglesby Co. v. New York Bank, 114 Va. 663, 77 S. E. 468.

If the public policy of the two states with respect to treating contractual provisions of this sort as valid or, invalid were embodied in statutory law, there can be little doubt that the law of the state where the contract was made and was to be performed would be applied in determining its validity. Seeman v. Philadelphia Warehouse Co., 274 U. S. 403, 407, 408, 47 S. Ct. 626, 71 L. Ed. 1123; Hartford Accident &

Indemnity Co. v. Delta & Pine Land Co., 292 U. S. 143, 54 S. Ct. 634, 636, 78 L. Ed. 1178, 92 A. L. R. 928. As said in the case last cited: "A state may limit or prohibit the making of certain contracts within its own territory (Hooper v. California, 155 U. S. 648, 15 S. Ct. 207, 39 L. Ed. 297; Orient Insurance Co. v. Daggs, 172 U. S. 557, 565, 566, 19 S. Ct. 281, 43 L. Ed. 552; New York Life Ins. Co. v. Cravens, 178 U. S. 389, 398, 399 [20 S. Ct. 962, 44 L. Ed. 1116]); but it cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made (New York Life Ins. Co. v. Head, 234 U. S. 149, 34 S. Ct. 879, 58 L. Ed. 1259; Ætna Life Ins. Co. v. Dunken, 266 U. S. 389, 399, 45 S. Ct. 129, 69 L. Ed. 342). Nor may it in an action based upon such a contract enlarge the obligations of the parties to accord with every local statutory policy solely upon the ground that one of the parties is its own citizen. Home Insurance Co. v. Dick, 281 U. S. 397, 407, 408, 50 S. Ct. 338, 74 L. Ed. 926, 74 A. L. R. 701."

██ Where a foreign contract is repugnant to good morals or where its enforcement would lead to disturbance and disorganization of the local municipal law, the courts will refuse to enforce it, as contrary to the public policy of the state of the forum. Bond v. Hume, 243 U. S. 15, 21, 37 S. Ct. 366, 61 L. Ed. 565; Parker v. Moore (C. C. A. 4th) 115 F. 799. And they will on like ground refuse to enforce a foreign contract affecting local property rights of persons domiciled within the state where such contract contravenes the settled law of the forum. Union Trust Co. v. Grosman, 245 U. S. 412, 38 S. Ct. 147, 62 L. Ed. 368. But they may not on grounds of public policy deny enforcement to a contract valid under the laws of the state where made in cases where the interest of the forum has but slight connection with the substance of the contract obligations. To quote again from the opinion in Hartford Acc. & Ind. Co. v. Delta & Pine Land Co., supra: "Conceding that ordinarily a state may prohibit performance within its borders even of a contract validly made elsewhere, if the performance would violate its laws (Home Insurance Co. v. Dick, supra, 281 U. S. 397, p. 408, 50 S. Ct. 338, 74 L. Ed. 926, 74 A. L. R. 701), it may not, on grounds of policy, ignore a right which has lawfully vested elsewhere, if, as here, the interest of the forum has but slight connection with the substance of the contract obligations. Here performance at most involved only the casual payment of money in Mississippi. In such a case the question ought to be regarded as a domestic one to be settled by the law of the state where the contract was made. A legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the forum, regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment. Ætna Life Ins. Co. v. Dunken, supra; Home Insurance Co. v. Dick, supra. Cases may occur in which enforcement of a contract as made outside a state may be so repugnant to its vital interests as to justify enforcement in a different manner. Compare Bond v. Hume, 243 U. S. 15, 22, 37 S. Ct. 366, 61 L. Ed. 565. But clearly this is not such a case."

If, therefore, there were a conflict between the law of Virginia with respect to the validity of a provision of the character here in question and the statute law of the state of West Virginia, we would enforce the contract in accordance with the agreement of the parties and the Virginia law; for West Virginia clearly has no such interest in the matter as would justify the courts in refusing enforcement on grounds of public policy. Whatever view may be taken of the provision for payment of attorneys' fees, it is not repugnant to good morals, nor does it tend to "disturbance and disorganization of local municipal law."

██ But there is no statute in West Virginia which would invalidate a provision of this character or forbid its enforcement in the courts. Recovery was denied upon it, because of the holding of the West Virginia courts that such recovery is contrary to the public policy of that state and because the judge below was of opinion that the federal courts are bound to follow the decisions of the courts of the state in such matters. In this we think there was error. The question involved is not a matter of statutory construction but of general law, as to which the federal courts exercise their independent judgment. The declara-

tion of public policy by a court with respect to such a provision is but a decision with respect to the principles of the general commercial law applicable to its validity; and nothing is better settled than that, with respect to such matters, the federal courts exercise an independent judgment and are not bound by the decisions of state tribunals. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Township of Pine Grove v. Talcott, 19 Wall. 666, 22 L. Ed. 227; Oates v. First National Bank, 100 U. S. 239, 246, 25 L. Ed. 580; Salem Trust Co. v. Manufacturers' Finance Co., 264 U. S. 182, 44 S. Ct. 266, 68 L. Ed. 628, 31 A. L. R. 867; Appleby v. City of New York, 271 U. S. 364, 46 S. Ct. 569, 70 L. Ed. 992; 27 R. C. L. 52. And the rule is not avoided by the declaration of a state court that its decision is grounded in public policy; for it is equally well settled that in matters of general law the federal courts determine such matters of public policy for themselves in deciding whether a contract is contrary thereto. Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U. S. 518, 48 S. Ct. 404, 407, 72 L. Ed. 681, 57 A. L. R. 426; Hartford Fire Ins. Co. v. Chicago, M. & St. Paul R. Co., 175 U. S. 91, 100, 20 S. Ct. 33, 44 L. Ed. 84; Lake Shore & M. S. R. Co. v. Prentice, 147 U. S. 101, 106, 13 S. Ct. 261, 37 L. Ed. 97; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 442, 9 S. Ct. 469, 32 L. Ed. 788; New York Cent. R. Co. v. Lockwood, 17 Wall. 357, 368, 21 L. Ed. 627; Interstate Compress Co. v. Agnew (C. C. A. 8th) 255 F. 508; Mechanics'-American Nat. Bank v. Coleman (C. C. A. 8th) 204 F. 24, 28; Gordon v. Ware Nat. Bank (C. C. A. 8th) 132 F. 444, 67 L. R. A. 550; Sheppey v. Stevens (C. C.) 177 F. 484; Eells v. St. Louis, etc., R. Co. (C. C.) 52 F. 903.

In the recent case of Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., supra, the question involved was the validity of a provision of a contract giving a taxicab company the exclusive privilege of going upon the trains of a railway company in the state of Kentucky, and into its depot and surrounding premises, for the purpose of soliciting transportation of baggage and passengers. The contract was made and to be performed in the state of Kentucky, but under the decisions of the highest court of that state the provision granting the ex-

clusive privilege was void as against public policy. In upholding the validity of the provision, the Supreme Court of the United States laid down, in no uncertain terms, the duty of the federal courts to determine for themselves such questions of public policy, where the matter involved was one of general law and did not involve a state statute, title to land, or fixed local usage. The court said:

"The decree below should be affirmed unless federal courts are bound by Kentucky decisions which are directly opposed to this court's determination of the principles of common law properly to be applied in such cases. Petitioner argues that the Kentucky decisions are persuasive and establish the invalidity of such contracts, and that the Circuit Court of Appeals [15 F.(2d) 509] erred in refusing to follow them. * * * But, granting that this point is before us, it cannot be sustained. The contract gives respondent, subject to termination on short notice, license or privilege to solicit patronage and park its vehicles on railroad property at train time. There is no question concerning title to land. No provision of state statute or Constitution and no ancient or fixed local usage is involved. For the discovery of common-law principles applicable in any case, investigation is not limited to the decisions of the courts of the state in which the controversy arises. State and federal courts go to the same sources for evidence of the existing applicable rule. The effort of both is to ascertain that rule. * * * As respects the rule of decision to be followed by federal courts, distinction has always been made between statutes of a state and the decisions of its courts on questions of general law. The applicable rule sustained by many decisions of this court is that, in determining questions of general law, the federal courts, while inclining to follow the decisions of the courts of the state in which the controversy arises, are free to exercise their own independent judgment."

In Mechanics'-American Nat. Bank v. Coleman, supra, the question was squarely presented to the Circuit Court of Appeals of the Eighth Circuit as to whether it was bound by the decisions of the courts of Missouri, with respect to the validity of a provision in a promissory note for the payment of attorneys' fees for collection. In holding that it was not so bound, but would

exercise its independent judgment in the matter, the court, speaking through Judge Van Valkenburgh, said:

"The position of counsel for appellant is that a clause in a note stipulating for an attorney's fee, provided the note is placed in the hands of an attorney for collection, is valid, enforceable, and conclusive as to amount; that such is the law of the state of Missouri, in which this contract was made, and therefore binding upon this court. The proposition, as stated, cannot be accepted in its entirety. The question here presented is one which falls within the domain of general or commercial law. It involves simply the construction and effect of recitals in negotiaable instruments, and no question of right under the Constitution and statutes of a state. In such matters the decisions of the state court are not controlling in the federal tribunals.

"'It is not only the privilege, but the duty, of the federal courts, imposed upon them by the Constitution and statutes of the United States, to consider for themselves, and to form their independent opinions and decisions upon, questions of commercial or general law presented in cases in which they have jurisdiction, and it is a duty which they cannot justly renounce or disregard.' Independent School Dist. v. Rew, 111 F. 1, 49 C. C. A. 198, 55 L. R. A. 364."

Our view is in accord with this statement of the rule, and we think there can be no doubt with regard to it, in the light of the decisions cited by the Supreme Court in the Black & White Taxicab Case, supra, and by this court in the recent case of Hewlett v. Schadel (C. C. A. 4th) 68 F.(2d) 502, 91 A. L. R. 743. If, as has been held, the federal courts are not bound by state decisions declaring public policy with respect to provisions of contracts relieving common carriers of liability for negligence or establishing exclusive rights, there is certainly no reason why they should be bound by such decisions relating to the validity of provisions of negotiable instruments governed by the general commercial law, as to which it is of the utmost importance that there be uniformity of decision throughout the country.

■ We come, then, to the question as to whether the provision for a 10 per cent. attorney's fee for collection in case of default in the payment of a promissory note is to be condemned as contrary to the pol-icy of the law; and we think that this question, nothing else appearing, must be answered in the negative. Of course, if it should appear that a particular provision were used as a mere cloak for usury or that the provision were for so large an amount or were of such a character as to show an intention to provide a mere penalty for nonpayment, a different question would be presented, and it might well be condemned as in conflict with the well-settled policy of the law. But, where the provision is reasonable in amount and legal services are required and are actually rendered in the collection of the instrument, we can think of no consideration of public policy which should condemn it. In such case, it is properly viewed, not as a provision for additional interest exacted of the borrower for the use of the money, or as a provision for a penalty imposed upon him for breach of his contract, but as a provision for indemnifying the lender for the expense to which he may be put by reason of the borrower's default. Where there is such default, the attorneys' fees incurred in making collection may well exceed the interest collected on the loan; and no considerations of public policy require that this loss fall upon the lender rather than upon the borrower whose default has occasioned the loss. If public policy be viewed from the standpoint of the interest of borrowers alone, it is apparent that loans will be more readily obtained and upon more favorable terms if the parties are allowed to agree that, upon the borrower's default, the expense of collection shall fall upon him rather than upon the lender, who receives for making the loan nothing but the rate of interest provided and who is entitled under the contract to be paid at maturity. The question is not a new one, but has been repeatedly before the courts; and the overwhelming weight of authority is in accordance with the view herein expressed, being sustained by decisions in Alabama, California, Colorado, the Dakotas, Georgia, Idaho, Illinois, Indiana, Iowa, Maryland, Minnesota, Mississippi, Missouri, Montana, New Mexico, New York, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin. See notes in Ann. Cas. 1917D, 366, and L. R. A. 1915B, 933, and cases cited.

The question first arose in a reported case in the federal courts in Bank of British North America v. Ellis, 2 Fed. Cas. 622, No. 859, and Id. (C. C.) 2 F. 44, where

a provision for the payment of an attorney's fee for collection in default of payment of certain promissory notes was upheld by Judge Deady. This was followed by the case of Wilson Sewing-Machine Co. v. Moreno (C. C.) 7 F. 806, 808, decided by the same judge, who in the course of the opinion said: "The ruling that such stipulation makes the note usurious is founded upon the unauthorized assumption of fact that the sum agreed to be paid as an attorney fee in case the note is not paid at maturity is not what it purports to be, but illegal interest in the disguise thereof. Of course, where it appears that such is the real nature of the transaction it should be treated accordingly. But the fact cannot be assumed any more than that a like sum of the alleged principal is illegal interest in disguise. Accordingly, the tendency of the decisions hostile to this stipulation is to leave these untenable grounds, and hold it void upon the ground that it is a convenient device for usury and tends to the oppression of the debtor. And it may be admitted that this suggestion is not without force, particularly in cases where the amount provided is largely in excess of what such collection could ordinarily be made for. But a court assumes to make the law rather than declare it, when it pronounces such a contract void; not because it is prohibited or intrinsically wrong, but because it may be used as a cover for usury, and a means of oppressing the debtor. An agreement by a debtor to pay a reasonable attorney fee in case his creditor is compelled to incur the expense of an action to collect the debt, is only an agreement to so far re-imburse the creditor the loss which he may sustain by reason of the debtor's failure to perform his contract to pay his debt. In justice and fairness it stands on as high ground as the right to recover damages for the non-performance of any contract; as to deliver grain or goods at a certain time and place." The same reasoning was followed by Judge Simonton of this Court in American Freehold Land-Mortgage Co. v. Whaley, 63 F. 743, 749, in an opinion which was approved by this court in Whaley v. American Freehold Land-Mortgage Co. (C. C. A. 4th) 74 F. 73, 78.

In Merchants' Bank of Grenada v. Thomas, 121 F. 306, 312, the Circuit Court of Appeals of the Fifth Circuit upheld a provision for an attorney's fee of 10 per cent. for collection, saying, however, that a stipulation for a definite amount would not be held conclusive upon the parties, but that, where the amount stipulated was not obviously excessive, the stipulation as to the amount should govern. The rule as there stated by the late Judge Shelby commends itself to us as being eminently sound and fair; and we quote from his opinion as follows: "An agreement by which the maker of a promissory note or other contract binds himself to pay a reasonable attorney's fee if the contract is not performed according to its terms, and the other party is required to take steps to enforce it, has generally been held just and valid. Wilson Sewing-Machine Co. v. Moreno (C. C.) 7 F. 806. It is but a reasonable stipulation for indemnity for expenses which the debtor may himself render necessary. * * * A stipulation, however, for a definite amount or percentage as attorney's fees in a note is not conclusive on the parties. A creditor would not be permitted to make a profit to himself by stipulating for a larger sum or percentage than the reasonable attorney's fees he would have to pay. Munter v. Linn, 61 Ala. 492; Williams v. Flowers, 90 Ala. 136, 7 So. 439, 24 Am. St. Rep. 772. When, however, the amount is not obviously excessive, the stipulation as to the amount should govern. Dorsey v. Wolff, 142 Ill. 589, 32 N. E. 495, 18 L. R. A. 428, 34 Am. St. Rep. 99."

In Chestertown Bank v. Walker (C. C. A. 4th) 163 F. 510, this court recognized the validity of such a provision under the law of Maryland, but sustained the order of the District Court in disallowing a claim in bankruptcy based thereon, upon the ground that there was no showing that any attorneys' fees were earned prior to bankruptcy. And this was the holding in McCabe v. Patton (C. C. A. 3d) 174 F. 217, which recognized the validity of the provision under the Pennsylvania decisions to the extent that it provided reasonable indemnity against expenses of collection actually incurred. See, also, In re Fabacher (D. C.) 193 F. 556, an opinion by Judge Foster, applying the Louisiana rule and holding that under such a provision a court of bankruptcy should allow only a reasonable fee in the light of services rendered. Only one federal case that we have been able to find, Merchants' Nat. Bank v. Sevier (C. C.) 14 F. 662, holds that the provision is to be treated as absolutely void. In Mechanics'-American Nat. Bank v. Coleman, supra, 204 F. 24, 31, the Circuit Court of Appeals of the Eighth Circuit,

while disallowing recovery on the ground that no services had been rendered by attorneys as contemplated by the provision, held the provision valid to the extent that it provided for the payment of a reasonable attorney's fee for services actually rendered, saying: "In discharge of the duty imposed upon us to consider for ourselves and form our independent opinions upon questions of commercial and general law presented for our decision, we are constrained to hold that this provision in the notes in suit calls for the payment only of a reasonable attorney's fee, for services actually rendered in conformity with its terms; that such is the decided weight of authority; and that neither the statute law of Missouri, nor the decisions of its courts of last resort, are in conflict therewith."

In the comparatively recent case of Taylor et al. v. Continental Supply Co., 16 F.(2d) 578, 580, the question was again before the Circuit Court of Appeals of the Eighth Circuit; and that court, speaking through the late Judge Kenyon, laid down the rule as follows: "It is without question that, in a suit upon a note which provides for attorneys' fees, such attorneys' fees are for indemnity, and not for a penalty, or for the purpose of enriching the party suing. Mechanics'-American Nat. Bank v. Coleman (C. C. A.) 204 F. 24; Florence Oil & Ref. Co. v. Hiawatha Gas, etc., Co., 55 Colo. [378] 382, 135 P. 454; Jones v. First National Bank, 74 Colo. 140, 219 P. 780. The amount in a note agreed on as attorney's fee is presumed to be a reasonable attorney's fee, and the burden is on defendant, when suit is brought on a note providing for attorneys' fees, to show that the amount fixed in the note is not such. 8 C. J. p. 1103, § 1438."

In the light of these decisions and the overwhelming weight of authority in the state courts, we hold the rule to be (1) that a provision in a promissory note for the payment of attorneys' fees for services actually rendered in collection is not to be condemned as contrary to public policy, if reasonable in amount and not used as a cloak for usury or other forbidden transaction; (2) that such a provision is enforced as a contract of indemnity and the amount stipulated therein is not absolutely binding on the parties or on the court, but will be enforced to the extent that it provides for a reasonable attorneys' fee for services actually rendered in accordance with its terms; and (3) that, where services have been rendered and the amount stipulated is not obviously excessive, the stipulation as to the amount should govern.[1]

---

1 I. Validity of Stipulation for Attorneys' Fees.

A. The following cases sustain the validity of stipulations in notes for a specified sum or per cent. as attorney's fees without discussing the reasonableness thereof: Rubenstein v. Nourse (C. C. A. 8th) 70 F.(2d) 482; Wood v. Winship Machine Co., 83 Ala. 424, 3 So. 757, 3 Am. St. Rep. 754; Ledbetter & Co. Land & Loan Ass'n v. Vinton, 108 Ala. 644, 18 So. 692; Langley v. Andrews, 142 Ala. 665, 38 So. 238; Alexander v. McDow, 108 Cal. 25, 41 P. 24; Mason v. Luce, 116 Cal. 232, 48 P. 72; Curtis v. Wasem, 96 Cal. App. 604, 274 P. 607; Byers v. Bellan-Price Inv. Co., 10 Colo. App. 74, 50 P. 368; Carhart v. Allen, 56 Fla. 763, 48 So. 47; Stocking v. Moury, 128 Ga. 414, 57 S. E. 704 (providing notice is given as required by statute); Mt. Vernon Bank v. Gibbs, 1 Ga. App. 662, 58 S. E. 269 (providing notice is given as required by statute); Keenan v. Blue, 240 Ill. 177, 83 N. E. 553; Martin v. Berry, 1 Ind. T. 399, 37 S. W. 835; Brahan v. First Nat. Bank, 72 Miss. 266, 16 So. 203; Duggan v. Champlin, 75 Miss. 441, 23 So. 179; Millsaps v. Chapman, 76 Miss. 942, 26 So. 369, 71 Am. St. Rep. 547; Bank of Duncan v. Brittain, 92 Miss. 545, 46 So. 163; North Atchison Bank v. Gay, 114 Mo. 203, 210, 21 S. W. 479; Creasy v. Gray, 88 Mo. App. 454; Bank of Neelyville v. Lee, 182 Mo. App. 185, 168 S. W. 796; First Nat. Bank v. Stam, 186 Mo. App. 439, 171 S. W. 567; Bond v. Dolby, 17 Neb. 491, 23 N. W. 351; Armijo v. Henry, 14 N. M. 181, 89 P. 305, 25 L. R. A. (N. S.) 275; Heating & Plumbing Finance Corp. v. 4274 Third Ave. Corp., 147 Misc. 700, 264 N. Y. S. 505; Cooper v. Bank of Indian Territory, 4 Okl. 632, 46 P. 475; Continental Gin Co. v. Sullivan, 48 Okl. 332, 150 P. 209; First Nat. Bank of Stigler v. Howard, 59 Okl. 237, 158 P. 927; Branyan v. Kay, 33 S. C. 283, 11 S. E. 970; Montague v. Stelts, 37 S. C. 200, 202, 15 S. E. 968, 34 Am. St. Rep. 736; Daly v. Sumpter Drug Co., 127 Tenn. 412, 155 S. W. 167, Ann. Cas. 1914B, 1101; Simmons v. Terrell, 75 Tex. 275, 12 S. W. 854; Krause v. Pope, 78 Tex. 478, 14 S. W. 616; Kendall v. Page, 83 Tex. 131, 18 S. W. 333; Morrill v. Hoyt, 83 Tex. 59, 18 S. W. 424, 29 Am. St. Rep. 630; Laning v. Iron City Nat. Bank, 89 Tex. 601, 35 S. W. 1048; Miller v. Gaar-Scott & Co. (Tex. Civ. App.) 141 S. W. 1053; R. S. Oglesby Co.

It is suggested that an anomalous situation is presented where a conflict of decisions arises between the state and federal courts sitting in the same state with respect to a rule grounded on public policy. We agree that such conflicts are to be avoided wherever possible; but this does not absolve the federal courts from exercising an independent judgment in matters of general law and declaring the law as

v. Bank of New York, 114 Va. 663, 77 S. E. 468; Vipond v. Townsend, 88 Wis. 285, 60 N. W. 430.

B. Likewise, where the note contains a stipulation for "a reasonable attorney's fee," or for "an attorney's fee," or for "cost of collection," etc., the validity has been upheld. Bank of British N. America v. Ellis (C. C. Or.) 2 Fed. Cas. 622, No. 859 and Id. (C. C.) 2 F. 44; Wilson Sewing-Machine Co. v. Moreno (C. C. Or.) 7 F. 806; In re Keeton, Stell & Co. (D. C. Tex.) 126 F. 426; Johnson v. Durner, 88 Ala. 580, 7 So. 245; Hovey v. Edmison, 3 Dak. 449, 22 N. W. 594; Logan v. Slade, 28 Fla. 699, 10 So. 25; Merck v. American Freehold Land Mtg. Co., 79 Ga. 213, 7 S. E. 265; Ray v. Pease, 97 Ga. 618, 25 S. E. 360; Easley v. Deer, 69 Ind. App. 264, 121 N. E. 542; McGill v. Griffin, 32 Iowa, 445; First Nat. Bank of Ft. Dodge v. Breese, 39 Iowa, 640; Maryland Fertilizing & Mfg. Co. v. Newman, 60 Md. 584, 45 Am. Rep. 750; Eyrich v. Capital State Bank, 67 Miss. 60, 6 So. 615; Bank of Duncan v. Brittain, 92 Miss. 545, 46 So. 163; German-American Bank v. Martin, 129 Mo. App. 484, 107 S. W. 1108; Morrison v. Ornbaun, 30 Mont. 111, 75 P. 953; O'Sullivan v. Burling, 91 Mont. 244, 6 P.(2d) 1103; Kimball v. Moir, 15 Or. 427, 15 P. 669; Commercial Nat. Bank v. Davidson, 18 Or. 57, 22 P. 517; Levens v. Briggs, 21 Or. 333, 28 P. 15, 14 L. R. A. 188; Bradtfeldt v. Cooke, 27 Or. 194, 40 P. 1, 50 Am. St. Rep. 701; Cox v. Alexander, 30 Or. 438, 46 P. 794; Aultman & Taylor Co. v. Gibert, 28 S. C. 303, 5 S. E. 806; Clark v. Jones, 93 Tenn. 639, 643, 27 S. W. 1009, 42 Am. St. Rep. 931; Tyler v. Walker, 101 Tenn. 306, 47 S. W. 424; Martin Brown Co. v. Perrill, 77 Tex. 199, 13 S. W. 975; Atkinson v. Neblett, 144 Va. 220, 132 S. E. 326; Cloud v. Rivord, 6 Wash. 555, 34 P. 136; Gilmore v. Gilmore, 165 Wash. 492, 6 P.(2d) 69.

C. In the following cases, where a stipulation for a specified fee was held valid, it was further held that "unreasonableness was a matter of affirmative defense," and, in the absence of proof, the holder was prima facie entitled to recover the stipulated sum, or that the amount stipulated in the note was presumed to be reasonable. Taylor v. Continental Supply Co. (C. C. A. 8th) 16 F.(2d) 578; Stephenson v. Allison, 123 Ala. 439, 26 So.

290; Smiley v. Meir, 47 Ind. 559; American Savings Bank v. Sutton (Mo. App.) 204 S. W. 572; Exchange Bank v. Tuttle, 5 N. M. 427, 23 P. 241, 7 L. R. A. 445; First Nat. Bank v. Robinson, 104 Tex. 166, 135 S. W. 372; Lanier v. Jones, 104 Tex. 247, 136 S. W. 255; Amuny v. Seaboard Bank & Trust Co. (Tex. Com. App.) 23 S.W.(2d) 287; Utah Nat. Bank v. Nelson, 38 Utah, 169, 111 P. 907.

## II. As a Contract of Indemnity.

A. Generally.—A provision to pay attorney's fees has been held valid as a contract of indemnity in the following cases: Blount Bros. Realty Co. v. Eilenberger, 98 Fla. 775, 124 So. 41; Weigley v. Matson, 125 Ill. 64, 16 N. E. 881, 8 Am. St. Rep. 335; Judson v. Romaine, 8 Ind. App. 390, 35 N. E. 912; Nett v. Stockgrowers' Finance Corp., 84 Mont. 116, 274 P. 497; First Nat. Bank v. Robinson, 104 Tex. 166, 135 S. W. 372.

B. In a number of jurisdictions a stipulation to pay a specific sum or per cent. as attorney's fees has been held valid as a contract of indemnity to reimburse the holder of the note for reasonable and necessary attorney's fees, not exceeding the specified amount, and that the holder is not to be permitted to profit thereby. Merchants' Bank v. Thomas (C. C. A. 5th) 121 F. 306; Taylor v. Continental Supply Co. (C. C. A. 8th) 16 F.(2d) 578; Florence Oil & Refining Co. v. Hiawatha Gas, Oil & Refining Co., 55 Colo. 378, 135 P. 454; Sarasota Pub. Co. v. E. C. Palmer & Co., 102 Fla. 303, 135 So. 521; Barton v. Farmers' & Merchants' Nat. Bank, 122 Ill. 352, 13 N. E. 503; Goss v. Bowen, 104 Ind. 207, 2 N. E. 704; Rouyer v. Miller, 16 Ind. App. 519, 44 N. E. 51, 45 N. E. 674; Campbell v. Worman, 58 Minn. 561, 60 N. W. 668; Cox v. Smith, 1 Nev. 161, 90 Am. Dec. 476; Baker Gin Co. v. N. S. Sherman Machine & Iron Works, 31 Okl. 484, 122 P. 235; McClain v. Continental Supply Co., 66 Okl. 225, 168 P. 815; Luzenburg v. Bexar Bldg. & Loan Ass'n, 9 Tex. Civ. App. 261, 29 S. W. 237; Hammond v. Atlee, 15 Tex. Civ. App. 267, 39 S. W. 600; Reed v. Taylor (Tex. Civ. App.) 129 S. W. 864; Miller v. West Texas Lumber Co. (Tex. Civ. App.) 131 S. W. 608; Hassell v. Steinmann (Tex. Civ. App.) 132 S. W. 948; Salisbury v. Stewart, 15 Utah, 308, 49 P. 777, 62 Am. St. Rep.

they find it to be. The possibility of occasional conflicts is inherent in our dual system of government, and much less mischief will result from occasional conflict of decision between state and federal tribunals than from a rule which would bind the federal courts to follow the decisions of local tribunals. It is certainly no more unfortunate in this case that the federal courts should differ from the state tribunals in their understanding of the law than that a contract made in Virginia, and valid under the laws of that state, should be denied enforcement because of a view of public policy taken by the courts of West Virginia, which is contrary to the overwhelming weight of authority throughout the country, and, as we think, to the principles of the general commercial law.

And it is no answer to the last suggestion to say that, because the defendants were residents in West Virginia, it must have been contemplated that courts in that state would be called upon to enforce the contract against them. It was to meet just such a situation that the federal courts were given jurisdiction by the Constitution in cases involving diversity of citizenship. The exercise of the judicial function is an attribute of sovereignty; and under our dual system of government the exercise of this sovereign power between citizens of different states was vested in the federal courts, as in such cases these were the only tribunals available of the only sovereign to which both parties owed allegiance. If they are to do justice between citizens of different parts of the country, they must exercise an independent judgment on the law as well as on the facts; and it is manifest that they cannot properly perform the function for which they were designed if in the attempt to administer justice they are tied down by local departures from the general law, of which the nonresident party may not be presumed ever to have heard. As we said in Hewlett v. Schadel, supra, 68 F.(2d) 502, 504, 91 A. L. R. 743:

"There has been in recent years some criticism of the rule of Swift v. Tyson from those who have apparently seen no more in the rule than that it sometimes results in conflicts of decision between state and federal courts, and who have ignored both the underlying principle upon which it is based and the broad public policy which makes it of infinitely greater importance to-day than when announced nearly a century ago. The principle upon which the rule is based is that the common law is the law of the various states, except as changed by statute, and that this is the law to be applied by the federal

---

934; Conway v. American Nat. Bank, 146 Va. 357, 131 S. E. 803.

C. And a stipulation for attorney's fees, without specifying any sum or per cent., has been held valid as a contract of indemnity; and the holder can recover thereunder only such reasonable fees as he has actually paid or has become liable for. Harvey v. Baldwin, 124 Ind. 59, 24 N. E. 347, 26 N. E. 222; Lindley v. Sullivan, 133 Ind. 588, 32 N. E. 738, 33 N. E. 361; Starnes v. Schofield, 5 Ind. App. 4, 31 N. E. 480; Moore v. Staser, 6 Ind. App. 364, 32 N. E. 563, 33 N. E. 665; Boyd v. Smith (Ind. App.) 39 N. E. 208; Shoup v. Snepp, 22 Ind. App. 30, 53 N. E. 189; Peyser v. Cole, 11 Or. 39, 4 P. 520, 50 Am. Rep. 451; Imler v. Imler, 94 Pa. 372; Morris Plan Co. v. Whitman, 51 R. I. 24, 150 A. 610.

III. Reasonable Fees.

In a number of cases the validity of stipulations for a specific sum or per cent. has been sustained, but held not conclusive as to the amount the holder is entitled to recover, and the stipulation enforced to the extent of allowing a reasonable attorney's fee. In re Gebhard (D. C. Pa.) 140 F. 571; Chestertown Bank of Md. v. Walker (C. C. A. 4th) 163 F. 510; McCabe v. Patton (C. C. A. 3d) 174 F. 217; Mechanics'-American Nat. Bank v. Coleman (C. C. A. 8th) 204 F. 24; Williams v. Flowers, 90 Ala. 136, 7 So. 439, 24 Am. St. Rep. 772; Montgomery v. Crossthwait, 90 Ala. 553, 8 So. 498, 12 L. R. A. 140, 24 Am. St. Rep. 832; Hildreth v. Williams, 4 Cal. Unrep. 141, 33 P. 1113; Rinker v. Lauer, 13 Idaho, 163, 88 P. 1057; White v. Lucus, 46 Iowa, 319; Johnston Harvester Co. v. Clark, 30 Minn. 308, 15 N. W. 252; Bank of Commerce v. Fuqua, 11 Mont. 285, 28 P. 291, 14 L. R. A. 588, 28 Am. St. Rep. 461; Holston Nat. Bank v. Wood, 125 Tenn. 6, 140 S. W. 31; McCormick v. Swem, 36 Utah, 6, 102 P. 626, 20 Ann. Cas. 1368; Colley v. Summers Parrott Hardware Co., 119 Va. 439, 89 S. E. 906, Ann. Cas. 1917D, 375; Triplett v. Second Nat. Bank, 121 Va. 189, 92 S. E. 897; Cox v. Hagan, 125 Va. 656, 100 S. E. 666; University of Richmond v. Stone, 148 Va. 686, 139 S. E. 257; First Nat. Bank v. Larsen, 60 Wis. 206, 19 N. W. 67, 50 Am. Rep. 365; Pirie v. Stern, 97 Wis. 150, 72 N. W. 370, 65 Am. St. Rep. 103.

334

courts in deciding cases not dependent upon statute or some local rule affecting property or the internal organization of the state. In applying the common law, the federal courts must decide what the law is in the light of the well-settled rule that decisions are mere evidences of the law and not the law itself. Decisions of the local courts are, of course, entitled to great respect as evidences of the law; but, if they have departed from the principles of the common law, it is the duty of the federal courts to follow the law rather than them. One of the principal purposes of the creation of the federal courts was to establish impartial tribunals which would not be subject to local influences; and, if this purpose is to be attained, they must be allowed to exercise an independent judgment on the law as well as on the facts of the cases before them.

"And the argument from the standpoint of public policy is equally strong. The United States is no longer a mere confederation of states. It is a great nation. It is essential to the free development of trade and commerce within its borders that the rules of law governing the people in their various relationships be as uniform as possible, so that the citizen who trades, or travels, or makes investments, in states other than that of his residence, may know with substantial certainty what his rights and liabilities in a given situation will be. To hold that the federal courts must follow the state courts whenever they depart from the rules of the common law would tend to destroy the unity and uniformity of the law and would greatly weaken our federal system; for it must be remembered that any external union depends in the last analysis upon internal unity, and that there is no more important unifying influence in our national life than the great legal system which is the common heritage of our people. To hold to the rule of Swift v. Tyson, on the other hand, will preserve a uniform body of law upon which those who do business in other states can depend, and which will inevitably have a unifying influence on the decisions of the state courts themselves."

For the reasons stated, the judgment appealed from will be reversed, and the cause will be remanded for further proceedings not inconsistent herewith.

Reversed.